UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ASTOR CHOCOLATE CORP.,

                                        Plaintiff,

                    -v-

ELITE GOLD LTD., PT MAYORA INDAH TBK,
MAYORA GROUP, MAYORA CO., FOOD
DEPOT CORPORATION, ORANGE GROCER,
and FOOD INDUSTRIES,

                                        Defendants.

---

18 Civ. 11913 (PAE)

<u>OPINION & ORDER</u>

PAUL A. ENGELMAYER, District Judge:

Plaintiff Astor Chocolate Corp. ("Astor") brings this action against seven defendants: Elite Gold Ltd. ("Elite Gold"); PT Mayora Indah TBK, Mayora Group, and Mayora Co. (collectively, the "Mayora Parties"); and Food Depot Corp., Orange Grocer, and Food Industries (collectively, the "Food Depot Parties"). Astor alleges trademark infringement, unfair competition, deceptive business practices, false advertising, and injury to business reputation.

Astor's claims arise from Elite Gold's ownership of the registered mark "Astor" in connection with products similar to Astor's products; the Mayora Parties' manufacture and sale of such similar products, bearing the "Astor" mark licensed from Elite Gold; and the Food Depot Parties' offering and sale of such products in online commerce.

Pending now are defendants' motions to dismiss Astor's amended complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), as well as the Mayora Parties' motion to dismiss for improper service of process pursuant to Federal Rule of Civil Procedure 12(b)(5).

For the following reasons, the Court grants leave for Astor to conduct limited jurisdictional discovery as to each defendant and grants leave for Astor to amend its complaint for the sole purpose of adding Takari International, Inc., as a defendant.

## I.      Background[1]

### A.       The Parties

Astor is a New York corporation with its principal place of business in New Jersey.  AC ¶ 6.  Astor manufactures, wholesales, and retails chocolates and other confectionary products. *Id.* ¶ 1.  Astor markets and sells its products on the Internet and at retail establishments throughout the United States.  *Id.* ¶¶ 1, 6.  Astor has continuously used its unregistered trademarks—including "Astor Chocolate" and "Astor"—in connection with the above-described products in interstate commerce since as early as July 19, 1950.  *Id.* ¶ 1.  Astor also owns the domain name http://www.astorchocolate.com.  *Id.*  Astor represents that it is a widely recognized

---

[1] The Court's account of the factual allegations is drawn primarily from Astor's Amended Complaint, Dkt. 29 ("AC").  On a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the Court may look beyond the four corners of the complaint and consider materials outside of the pleadings, including accompanying affidavits, declarations, and other written materials.  *See Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 323 (S.D.N.Y. 2015) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).  The allegations in the complaint are presumed true "to the extent they are uncontroverted by the defendant's affidavits," *MacDermid*, 702 F.3d at 727 (citation omitted), and all factual disputes are resolved in the plaintiff's favor, *see DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001).  Accordingly, the Court has considered the declaration of Bruce Ainbinder, Esq., in support of Elite Gold's motion, Dkt. 47 ("Ainbinder Decl."), and the exhibits attached thereto; the declaration of Douglas F. Hartman, Esq., in support of Elite Gold's motion, Dkt. 48 ("First Hartman Decl."), and the exhibits attached thereto; the sworn affidavits attached to Elite Gold's reply memorandum of law, Dkt. 60 ("Elite Gold Reply"); the declaration of Mr. Hartman in support of the Mayora Parties' motion, Dkt. 63 ("Second Hartman Decl."), and the exhibits attached thereto; the declaration of Mr. Hartman in support of the Food Depot Parties' motion, Dkt. 66 ("Third Hartman Decl."), and the exhibits attached thereto; and the affidavit of J. Mark Lane, Esq., in opposition to the Mayora Parties' and the Food Depot Parties' motions, Dkt. 71 ("Lane Aff."), and the exhibits attached thereto.

brand in the confectionary industry, and that it has received industry awards for more than half a century. *Id.*

Elite Gold is an intellectual property holding company incorporated in the British Virgin Islands with its principal address in the British Virgin Islands. *See* Ainbinder Decl., Ex. C ("Tjay Decl.") ¶¶ 3, 8; *see also* AC ¶ 7. Elite Gold has owned the mark ASTOR, U.S. Trademark Reg. No. 4,938,707 (the "Elite Gold Mark"), since April 12, 2016, with a stated date of first use of January 1, 2012. AC ¶ 31; *see also* Tjay Decl. ¶¶ 9–10. The Elite Gold Mark is registered in International Class 30 for several foodstuffs, including chocolate, chocolate bars, chocolate confections, chocolate wafer sticks, cookies, snacks, and wafers. AC ¶ 31. Elite Gold does not directly manufacture, sell, or otherwise distribute goods or services in connection with the "Astor" mark. Tjay Decl. ¶ 11.

PT Mayora Indah TBK ("Mayora Indah") is an Indonesian corporation with a place of business in Jakarta, Indonesia. *See* Second Hartman Decl., Ex. D ("Lauwrus Decl.") ¶ 3; *see also* AC ¶ 8. Mayora Indah and Elite Gold are separate companies. Tjay Decl. ¶¶ 3–4. Mayora Indah licenses the Elite Gold Mark and manufactures and sells products branded with the Elite Gold Mark. Lauwrus Decl. ¶¶ 4–5.

Mayora Group is a trade name for Mayora Indah and not a legal entity. Lauwrus Decl. ¶ 10; *see also* AC ¶ 9. However, Elite Gold listed "Mayora Group" as its "Licensee and Manufacturer" in its Initial Disclosures to the U.S. Patent and Trademark Office. Lane Aff., Ex. B ("Initial Disclosures"). There is no legal entity named Mayora Co. Lauwrus Decl. ¶ 11.

All three Food Depot Parties—Food Depot Corporation, Orange Grocer, Inc., and Food Industries, Inc.—are Oklahoma corporations. Third Hartman Decl., Ex. B ("Widianto Decl.")

¶ 3.  Each does business out of California.  *Id.*; *see also* AC ¶ 13.  The Food Depot Parties sell products on online marketplaces, such as Amazon.com and eFoodDepot.com.  AC ¶¶ 46–50, 53–59.

Food Depot Corporation is the corporate name of the entity operating eFoodDepot.com. *Id.* ¶ 13.  Food Depot Corporation is located at the same address from which goods are shipped when ordered from Orange Grocer and Food Industries online.  *Id.* ¶¶ 11–13.

Orange Grocer, Inc., offers and sells, under the name "Astor" on Amazon.com, products identical to the specimen used by Elite Gold in its PTO application.  *Id.* ¶ 11.  Food Industries, Inc., offers and sells, under the name "Astor" on Amazon.com, products identical to the specimen used by Elite Gold in its PTO application, and identical to those sold by the Mayora Parties and Orange Grocer.  *Id.* ¶ 12.

The Food Depot Parties purchase "Astor"-branded products from Takari International, Inc. ("Takari"), in California and from no other person or entity.  Widianto Decl. ¶¶ 4, 7.  The Food Depot Parties have no agreements, contracts, or relationship with Elite Gold or the Mayora Parties.  *Id.* ¶¶ 8–9.

### B.     The ASTOR Trademark

Since as early as July 19, 1950, Astor has continuously used its trademark "Astor" in connection with chocolates and other confectionary products sold in interstate commerce. AC ¶ 1.  On December 13, 2017, Astor filed an application to register the mark "Astor Chocolate" with the United States Patent and Trademark Office (the "USPTO") in International Class 30. *Id.* ¶ 29.  The application was issued Serial No. 87719196.  *Id.*  Astor voluntarily disclaimed the generic term "chocolate," making "Astor" the key component of the applied-for mark.  *Id.*

However, on April 12, 2016, the USPTO had already granted to Elite Gold the registration of an identical mark, ASTOR (the "Elite Gold Mark"), also in International Class 30.

4

*Id.* ¶ 30.  In its application to register the mark, Elite Gold stated January 1, 2012, as the mark's date of first use in interstate commerce within the United States.  *Id.* ¶ 45; *see also* Lane Aff., Ex. F ("Elite Gold Mark Application").  Elite Gold's application also included a specimen; the specimen bears both the Elite Gold Mark and the name "Mayora."  AC ¶ 46; *see also* Elite Gold Mark Application.  Astor also alleges that Oey Him Tjay, the Elite Gold director listed on Elite Gold's application, is a Commissioner of a Mayora Group company.  AC ¶ 60.

Therefore, on February 23, 2018, the USPTO issued an Office Action, denying Astor's requested registration, in part because of the Elite Gold Mark's prior registration.  *See id.* ¶¶ 30–31. In response, on June 3, 2018, Astor filed a petition to cancel the Elite Gold Mark's registration, on the basis of Astor's prior use.  *Id.* ¶ 34.  On July 30, 2018, Elite Gold filed its answer, *id.* ¶ 35, and on September 27, 2018, Elite Gold filed its initial disclosures in connection with the petition to cancel, disclosing that "Mayora Group," with U.S. offices in San Diego, California, was "Licensee and Manufacturer for Elite Gold Ltd," *id.* ¶ 36; *see also* Lane Aff., Ex. B ("Initial Disclosures").  After Astor filed its Complaint in this case, the USPTO stayed the petition to cancel, pending the outcome of this action.  AC ¶ 38.

### C.    Defendants' Products

Astor represents that products identical to the specimen submitted by Elite Gold in its application to register the Elite Gold Mark are being sold in online commerce through Amazon.com, by sellers named "Mayora," "Orange Grocer," and "Food Industries," as well as through eFoodDepot.com.  *Id.* ¶¶ 46–49.  Astor sells its products through Amazon.com, too.  *Id.* ¶ 2.  Astor represents that none of the defendants that market products on Amazon.com list information about themselves on Amazon or provide "proper entity names" or addresses.  *Id.* ¶ 5.

Astor represents that the products offered on Amazon.com and eFoodDepot.com are offered to and sold in New York.  *Id.* ¶ 50.

On December 6, 2018, Astor's counsel caused an order to be placed on Amazon.com for "Astor Chocolate Wafer Stick," offered by "Orange Grocer," to be delivered to an address in New York State.  *Id.* ¶ 53. That package arrived in New York State on December 13, 2018.  *Id.* ¶ 54.  Like Elite Gold's specimen, this product bore both the "Astor" mark and the name "Mayora."  *Id.*  The product was mailed from California by Richi Widianto, president at Food Industries, Food Depot, and Orange Grocer.  *Id.* ¶ 56; *see also* Widianto Decl. ¶ 2.

On September 7, 2019, Astor's counsel placed another order on Amazon.com for "Astor Chocolate Wafer Stick," offered by "Food Industries," to be delivered to an address in New York State.  AC ¶¶ 57–58.  That package arrived in New York State on September 16, 2019.  *Id.* ¶ 59. That package showed a California return address belonging to Food Depot.  *Id.* ¶ 59.

### D.    Procedural History

On September 23, 2019, Astor filed its Amended Complaint.  AC.  On October 15, 2019, Elite Gold filed a motion to dismiss for lack of personal jurisdiction, Dkt. 45, along with a memorandum of law, Dkt. 46 ("Elite Gold Mem."), and declarations by Bruce Ainbinder, Esq., Ainbinder Decl., and Douglas F. Hartman, Esq., First Hartman Decl., which in turn attached, among other exhibits, a supplemental declaration of Mr. Tjay, *id.*, Ex. G ("Second Tjay Decl.").  On November 6, 2019, Astor filed its memorandum of law in opposition to Elite Gold's motion.  Dkt. 54 ("First Pl. Mem.").  On November 20, 2019, Elite Gold filed its reply, Elite Gold Reply, attaching three affidavits, Dkt. 60-1–3.

On November 26, 2019, Mayora Indah filed a motion to dismiss for lack of personal jurisdiction, for misnomer of parties, and for improper service of process, Dkt. 61, with an

accompanying memorandum of law, Dkt. 62 ("Mayora Mem."), as well as an additional declaration by Mr. Hartman, Second Hartman Decl., which in turn attached, among other exhibits, a third declaration of Mr. Tjay, *id.*, Ex. C ("Third Tjay Decl."), and the declaration of Yuki Teng, *id.*, Ex. E ("Teng Decl.").  Mayora Indah represented that Mayora Group and Mayora Co. are not legal entities, and therefore should be dismissed or stricken.  Mayora Mem. at 2, 4.

Also on November 26, 2019, the Food Depot Parties filed their motion to dismiss for lack of personal jurisdiction, Dkt. 64, with an accompanying memorandum of law, Dkt. 65 ("Food Depot Mem."), and an additional declaration by Mr. Hartman, Third Hartman Decl.

On January 10, 2020, Astor filed its memorandum of law in opposition to the motions to dismiss by both the Mayora Parties and the Food Depot Parties.  Dkt. 72 ("Second Pl. Mem."). On February 7, 2020, the Mayora Parties and the Food Depot Parties filed a combined reply. Dkt. 77 ("Mayora & Food Depot Reply").

## II.   Applicable Legal Standards

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *DiStefano*, 286 F.3d at 84; *see also In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).

"Where, as here, a district court in adjudicating a motion pursuant to Federal Rule of Civil Procedure 12(b)(2) 'relies on the pleadings and affidavits, and chooses not to conduct a

full-blown evidentiary hearing, plaintiffs need only make a prima facie showing of personal jurisdiction.'" *S. New Eng. Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).  "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *Id.* (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).

The Court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester Fin. Secs.*, 722 F.3d at 85 (quoting *S. New Eng. Tel.*, 624 F.3d at 138); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79–80 (2d Cir. 1993).  Nevertheless, the Court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation."  *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

"In evaluating jurisdictional motions, district courts enjoy broad discretion in deciding whether to order discovery." *In re Terrorist Attacks on Sept. 11, 2001*, 349 F. Supp. 2d 765, 811–12 (S.D.N.Y. 2005) (collecting cases), *aff'd*, 538 F.3d 71 (2d Cir. 2008), *and* 714 F.3d 118 (2d Cir. 2013).  "A district court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction." *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (internal quotation marks and citation omitted).  "If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a *prima facie* showing as to the existence of jurisdiction." *Daventree Ltd. v. Republic of Azerbaijan*, 349 F. Supp. 2d 736, 761 (S.D.N.Y. 2004) (citing *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 207–08 (2d Cir. 2003)).  "However, a court is not obligated to

subject a foreign corporation to discovery where the allegations of jurisdictional facts, construed most favorably in the plaintiff's favor, fail to state a basis for the exercise of jurisdiction or where a plaintiff's proposed discovery, if granted, would not uncover facts sufficient to sustain jurisdiction." *Id.* (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185–86 (2d Cir. 1998); *APWU*, 343 F.3d at 627).

## III.  Discussion

The Court first reviews the legal principles governing personal jurisdiction over defendants in this case, and then explains why jurisdictional discovery is warranted as to the Food Depot Parties, Elite Gold, and the Mayora Parties.

### A.  Applicable Legal Principles Governing Personal Jurisdiction

For a federal court to lawfully exercise personal jurisdiction, three primary requirements must be met.

"First, the plaintiff's service of process upon the defendant must have been procedurally proper." *Licci*, 673 F.3d at 59.

Second, "there must be a statutory basis for personal jurisdiction that renders such service of process effective." *Id.*  Here, Astor asserts that specific personal jurisdiction is proper as to all defendants under New York's long-arm statute, and, in the alternative, that specific personal jurisdiction is proper as to Elite Gold and the Mayora Parties under Federal Rule of Civil

Procedure 4(k)(2).[2]  *See, e.g.*, *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168

(2d Cir. 2015) (federal court generally determines whether it has personal jurisdiction over a

defendant based on the long-arm statute of the state in which it sits).  Thus, the relevant statutory

inquiry here is whether the Court may exercise specific personal jurisdiction over each defendant

under New York law, *see* New York Civil Practice Law and Rules ("C.P.L.R.") § 302, or, if not,

whether the Court may exercise specific personal jurisdiction over Elite Gold and the Mayora

Parties pursuant to Rule 4(k)(2).

 Third, if there is a statutory basis for jurisdiction, the Court then inquires whether "an

exercise of jurisdiction under these laws is consistent with federal due process requirements."

*Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *see generally*

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985).

  **1.**  **Service of Process**

 "Before a federal court may exercise personal jurisdiction over a defendant, the

procedural requirement of service of summons must be satisfied."  *Dynegy Midstream Servs. v.*

*Trammochem*, 451 F.3d 89, 94 (2d Cir. 2006) (citation omitted).  When "a defendant challenges

service of process, the burden of proof is on the plaintiff to show the adequacy of service."

*DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 64 (S.D.N.Y. 2010) (citations and internal

quotation marks omitted).  Courts analyze the sufficiency of service of process by looking to

---

[2] Personal jurisdiction may be general or specific.  General personal jurisdiction subjects a
defendant to suit on all claims.  *Cortlandt St. Recovery Corp. v. Deutsche Bank AG*,
No. 14 Civ. 1568 (JPO), 2015 WL 5091170, at *2 (S.D.N.Y. Aug. 28, 2015); *see also Goodyear*
*Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  A court may assert general
jurisdiction over a corporation where its "affiliations with the State are so 'continuous and
systematic' as to render [it] essentially at home in the forum State."  *Daimler AG v. Bauman*, 571
U.S. 117, 127 (2014) (quoting *Goodyear*, 546 U.S. at 919).  Specific personal jurisdiction
subjects a defendant to suit on only claims that arise from the defendant's conduct in the forum.
*Cortlandt St. Recovery Corp.*, 2015 WL 5091170, at *2; *see also Daimler*, 571 U.S. at 126–27.
As to each defendant, Astor asserts only specific personal jurisdiction.

Rule 4, which "governs the content, issuance, and service of a summons." *Id.* (citing Fed. R. Civ. P. 4).

Under Rule 4(h), unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation must be served in one of two ways.  The corporation may be served "in a judicial district of the United States . . . in the manner prescribed by Rule 4(e)(1) for serving an individual; or . . .  by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1).  Alternatively, the corporation may be served "at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2).

As to the timing of service, Rule 4(m) sets forth a general rule that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time," unless the plaintiff can show good cause for the failure.  Fed. R. Civ. P. 4(m).  However, Rule 4(m) also provides that "[t]his subdivision (m) does not apply to service in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1)." *Id.* "Although Rule 4(m) creates an exception for service in a foreign country pursuant to subdivision (f) . . . this exception does not apply if . . . the plaintiff did not attempt to serve the defendant [that resides] in the foreign country." *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 133–34 (2d Cir. 2005) (internal quotation marks and citations omitted); *accord DEF v. ABC*, 366 F. App'x 250, 253 (2d Cir. 2010) ( "[The] foreign country exception to . . .

4(m)'s [] time limit for service [is inapplicable] where a party did not attempt service within the [] limit and 'ha[d] not exactly bent over backward to effect service.'").

"When the foreign country exception does apply, the court use[s] a flexible due diligence standard to determine whether service of process was timely." *In re Bozel S.A.*, No. 16 Civ. 3739 (ALC), 2017 WL 3175606, at *2 (S.D.N.Y. July 25, 2017) (internal quotation marks and citation omitted).  The plaintiff bears the burden of proving "that it exercised due diligence in not timely serving the defendant." *Id.* (citation omitted).  In this analysis, "the court assesses the reasonableness of the plaintiff's efforts and the prejudice to the defendants from any delay." *Id.* (collecting cases).  However, if the foreign country exception does not apply, "[u]nder Rule 4(m), the Court *must* extend the time to serve if plaintiff has shown good cause, and *may* extend the time to serve even in the absence of good cause." *DeLuca*, 695 F. Supp. 2d at 66 (citation omitted).  "In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *Id.* (citations omitted).

### 2.    Statutory Basis for Jurisdiction

#### a.    *New York Long-Arm Statute – C.P.L.R. § 302*

Astor asserts that this Court has specific personal jurisdiction over each defendant under C.P.L.R. § 302(a)(1), (2), and (3).

Under C.P.L.R. § 302(a)(1), two conditions must be met.  First, the defendant must "transact . . . business within the state or contract[] anywhere to supply goods or services in the state." C.P.L.R. § 302(a)(1).  Second, the cause of action must arise from the "act[s] which are the basis of jurisdiction." *Id.*  This second condition requires a showing that the contacts with the state had a "substantial relationship" to the cause of action. *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006).  Section 302(a)(1) is a "single act"

statute; therefore, the defendant need not have engaged in more than one transaction in, or directed to, New York for New York courts to exercise jurisdiction. *See Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs.*, 7 N.Y.3d 65, 70 (2006).  Jurisdiction under § 302(a)(1) exists even if "the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) (citations omitted); *see also Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 787 (2d Cir. 1999) (finding personal jurisdiction based on a single transaction where defendant was not physically present in state).  A court may also find jurisdiction based on the totality of the defendant's conduct. *See, e.g.*, *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) ("No single event or contact connecting defendant to the forum state need be demonstrated; rather, the totality of all defendant's contacts with the forum state must indicate that the exercise of jurisdiction would be proper." (citations omitted)).

Section 302(a)(2) provides an alternative basis for personal jurisdiction over a defendant who "in person or through an agent . . . commits a tortious act within the state."  C.P.L.R. § 302(a)(2).  As with § 302(a)(1), "there is no minimum threshold of activity required so long as the cause of action arises out of the allegedly infringing activity in New York." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000).

Finally, § 302(a)(3) also permits courts to exercise personal jurisdiction over a non-domiciliary defendant "who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state."  C.P.L.R. § 302(a)(3).  Section 302(a)(3) only applies to a defendant that either "(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods

used or consumed or services rendered, in the state," or "(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." *Id.*

       *b.*      *Rule 4(k)(2)*

Rule 4(k)(2), the federal long-arm statute, allows federal courts to exercise personal jurisdiction if "(1) [] plaintiff's cause of action arise[s] under the federal law; (2) [] the defendant is not subject to the jurisdiction of the courts of general jurisdiction of any one State; and (3) [] the defendant's total contacts with the *United States* as a whole are sufficient to confer the court with personal jurisdiction without offending due process." *Hartford Fire Ins. v. Co.*, No. 03 Civ. 2196 (SAS), 2003 WL 22990090, at *3 (S.D.N.Y. Dec. 18, 2003) (quoting *Aerogroup Int'l, Inc. v. Marlboro Footworks, Ltd.*, 956 F. Supp. 427, 434 (S.D.N.Y. 1996)). This rule "extends the reach of federal courts to impose jurisdiction over the person of all defendants against whom federal law claims are made and who can be constitutionally subjected to the jurisdiction of the courts of the United States." *Chew v. Dietrich*, 143 F.3d 24, 27 (2d Cir. 1998) (quoting Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment). Rule 4(k)(2) thus "fill[s] a gap in the enforcement of federal law for courts to exercise personal jurisdiction over defendants with sufficient contacts with the United States generally, but insufficient contacts with any one state in particular." *In re Terrorist Attacks*, 349 F. Supp. 2d at 807 (internal quotation marks and citation omitted). In this Circuit, to meet the second requirement of Rule 4(k)(2), plaintiffs need to certify that, to their knowledge, the foreign defendant is not subject to jurisdiction in any other state. *In re SSA Bonds Antitrust Litig.*, 420 F. Supp. 3d 219, 240 (S.D.N.Y. 2019) (citing *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981 (PGG), 2015 WL 1514539, at *13 (S.D.N.Y. Mar. 31, 2015), *aff'd*, 771 F. App'x 498 (2d Cir. 2019)); *see also Porina v. Marward Shipping Co., Ltd.*, No. 05 Civ. 5621 (RPP), 2006 WL 2465819, at *4 (S.D.N.Y. Aug. 24, 2006)

14

(plaintiffs bear burden of certifying that to their knowledge, "the defendant is not subject to suit in the courts of general jurisdiction of any state"), *aff'd* 521 F.3d 122 (2d Cir. 2008).[3]

### 3.    Due Process Requirements of Personal Jurisdiction

Once a *prima facie* showing of a statutory basis for jurisdiction has been made, the plaintiff must then "demonstrate that the exercise of jurisdiction comports with due process." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 81–82 (2d Cir. 2018) (internal alterations omitted); *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  The constitutional analysis under the Due Process Clause consists of two separate components: the "minimum contacts" inquiry and the "reasonableness" inquiry.  *Licci*, 673 F.3d at 60 (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010)).

The "minimum contacts" inquiry examines "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction."  *Id.*  The Court considers these contacts in totality, with the crucial question being whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" such that the defendant "should reasonably anticipate being haled into court there."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King*, 471 U.S. at 474–75).  Specific jurisdiction may also exist even if the relevant conduct took place entirely outside the forum, based on the "in-state effects

---

[3] Elite Gold and the Mayora Parties have argued, without citing authority, that Rule 4(k)(2) cannot provide a basis for jurisdiction because the AC does not mention the Rule.  *See* Elite Gold Reply at 7; Mayora Mem. at 24.  "However, it is not the duty of the plaintiff to plead personal jurisdiction, but rather that of the defendant to raise or else waive lack of personal jurisdiction as an affirmative defense."  *Danaher Corp. v. Travelers Indem. Co.*, No. 10 Civ. 121 (JPO), 2014 WL 1133472, at *5 (S.D.N.Y. Mar. 21, 2014) (citing Wright & Miller, 5 Fed. Prac. & Proc. § 1206 (3d ed.)).  "Only once the defendant has contested personal jurisdiction does it become incumbent upon the plaintiff to make a *prima facie* showing of jurisdiction through its pleadings and affidavits."  *Id.*

of out-of-state activity." *Best Van Lines*, 490 F.3d at 243.  Where the so-called "effects" test is

invoked, "the exercise of personal jurisdiction may be constitutionally permissible if the

defendant expressly aimed its conduct at the forum." *Licci*, 732 F.3d at 173 (citing *Calder v.*

*Jones*, 465 U.S. 783, 789 (1983)).  However, the mere "fact that harm in the forum is foreseeable

. . . is insufficient for the purpose of establishing specific personal jurisdiction over a defendant."

*Waldman v. Palestinian Liberation Org.*, 835 F.3d 317, 339 (2d Cir. 2016) (quoting *In re*

*Terrorist Attacks*, 714 F.3d at 674).

The "reasonableness" inquiry examines "whether the assertion of personal jurisdiction

comports with 'traditional notions of fair play and substantial justice'—that is, whether it is

reasonable to exercise personal jurisdiction under the circumstances of the particular case."

*Licci*, 673 F.3d at 60 (quoting *Int'l Shoe*, 326 U.S. at 216).  As part of the "reasonableness"

inquiry, the Court considers: "(1) the burden that the exercise of jurisdiction will impose on the

defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest

in obtaining convenient and effective relief; (4) the interstate judicial system's interest in

obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states

in furthering substantive social policies." *Chloe*, 616 F.3d at 164–65 (quoting *Asahi Metal*

*Indus. Co. v. Superior Court*, 480 U.S. 102, 113–114 (1987)).

### B.    The Food Depot Parties

Astor asserts that personal jurisdiction over the Food Depot Parties is proper under

C.P.L.R. § 302(a)(1), (2), and (3), based on Astor's sale of infringing products bearing the Elite

Gold Mark to purchasers in New York.  AC ¶¶ 19–21.[4]  Astor alleges that the Food Depot

Parties offer products bearing the Elite Gold Mark in online commerce on Amazon.com and

---

[4] Rule 4(k)(2) cannot provide a basis for jurisdiction over the Food Depot Parties, because each
are subject to general jurisdiction in Oklahoma.

eFoodDepot.com.  *Id.* ¶¶ 46–49.  Additionally, Orange Grocer and Food Industries each shipped at least one "Astor Chocolate Wafer Stick" package into New York State at the behest of plaintiff's counsel.  *See id.* ¶¶ 53–59; *see also* Lane Aff., Ex. J ("Food Depot Receipts").  The Food Depot Parties counter that § 302 cannot form the basis for jurisdiction where the only alleged transactions into New York were made by plaintiff's counsel.  Food Depot Mem. at 5.

"While there is not unanimity on this issue, the vast weight of authority is that a finding of personal jurisdiction may not rest solely on an act such as this instigated by a plaintiff.  Courts in this District and elsewhere have expressed hostility towards finding jurisdiction under such potentially manufactured circumstances."  *Buccellati Holding Italia SPA v. Laura Buccellati, LLC*, 935 F. Supp. 2d 615, 623 (S.D.N.Y. 2013) (internal quotation marks and citation omitted) (collecting cases).  As in *Buccellati*, the only two shipments into New York State that Astor alleges here were at the direction of an agent of the plaintiff itself.  Under such circumstances, "the defendant cannot be said to have purposefully availed itself of the privilege of conducting activities in" New York.  *Buccellati*, 935 F. Supp. 2d at 624.[5]  On the present record, the Court cannot properly exercise personal jurisdiction over the Food Depot Parties.

However, the Food Depot Parties' submissions are deafeningly silent as to whether they have sold other Astor-branded products in, or delivered such products to, New York, aside from those purchased by plaintiff's counsel.  The existence of other pre-lawsuit sales of allegedly infringing products into New York is a "genuine issue of jurisdictional fact," *Daventree*, 349 F. Supp. 2d at 761, for which jurisdiction discovery is particularly appropriate.

---

[5] Additionally, for § 302(a)(1) to confer jurisdiction, the plaintiff's cause of action must arise from the transaction of business that plaintiff asserts was directed to New York.  *See Johnson v. Ward*, 4 N.Y.3d 516, 519 (2005).  Astor's cause of action cannot be said to arise from these two specific transactions, because there was no danger of Astor's own counsel confusing the Elite Gold Mark for Astor's mark.

Accordingly, the Court will allow Astor to pursue jurisdictional discovery—limited to written and document discovery only—as to the Food Depot Parties' marketing, sale, and shipment of allegedly infringing products in and into New York.  Astor's demands for such discovery are due May 12, 2020, and the Food Depot Parties shall produce all documents in response by May 26, 2020.[6]

### C.    Elite Gold

As to Elite Gold, Astor alleges that the specimen submitted by Elite Gold in its PTO application to register the Elite Gold Mark is identical to the products being marketed in the U.S. through eFoodDepot and Amazon, which bear a mark identical to the Elite Gold Mark, along with the name Mayora.  AC ¶ 46.  Astor claims that Elite Gold is using the Elite Gold Mark in the United States as an alter ego of Mayora, and that Elite Gold "is not 'merely a licensor,' but a facilitator, co-conspirator, and participant" in defendants' conduct.  *Id.* ¶ 5; *see id.* ¶ 51 (Elite Gold and the Mayora Parties "are also connected in management and control," as evidenced, purportedly, by Oey Him Tjay, a director of Elite Gold, also serving as a "Commissioner" of an Indonesian company named Nutrindo Bogarasa, PT, which is allegedly a "Mayora Group" company).  Astor further alleges that Elite Gold is knowingly licensing or permitting others to offer for sale in the U.S. infringing products bearing the Elite Gold Mark, without regard to the fact that such sales directly infringe Astor's rights in the Elite Gold Mark.  *Id.* ¶ 60.

---

[6] For avoidance of doubt, the Court does not authorize Astor at this stage to pursue merits discovery as to any defendant.  And because the purpose of the present round of discovery is solely to test jurisdiction, the Court directs that requests for production be tightly focused on this objective only.  Astor may seek, for example, "documents sufficient to identify all the defendant company's New York sales," but, in the interest of assuring that discovery is no broader than necessary, it may not formulate its requests more broadly to reach "all documents that exist" that bear on such sales.  The Court emphasizes that May 26, 2020 represents the date on which defendants are to complete jurisdictional document production.  The Court expects defendants to commence such productions as soon as practicable, and in advance of that end date.

Elite Gold counters that it: is a separate company and separate legal entity from Mayora Indah, Second Tjay Decl. ¶ 4; does not directly manufacture, sell, or otherwise distribute goods or services in connection with the Elite Gold Mark, Tjay Decl. ¶ 11; has not licensed the Elite Gold Mark to any individual or entity who resides in New York, who has a place of business in the state, who sells directly into the state, or who otherwise has any direct business relation to the state, *id.* ¶ 13; does not sell any products, anywhere in the world, via Amazon.com or any online retail platform, *id.* ¶ 16; does not license the Elite Gold Mark to any individuals or entities who sell goods through online distribution channels, *id.* ¶ 17; and has no agreements, contracts, or relationship with the Food Depot Parties or Yulen, Inc., Second Tjay Decl. ¶ 5; Third Tjay Decl. ¶ 9; Teng. Decl. ¶ 7.  Rather, Elite Gold avers that it owns the Elite Gold Mark and licenses it to Mayora Indah, and that Mayora Indah manufactures and sells product branded with the Elite Gold Mark.  Third Tjay Decl. ¶¶ 4–6.

Elite Gold's carefully worded declarations only partially refute Astor's allegations relating to personal jurisdiction.  While Elite Gold amply denies selling goods into New York, its declarations leave open the possibility that its licensees knowingly sell Astor-branded products into New York or the United States—potentially through an additional entity, such as Takari—or that Elite Gold otherwise purposefully derives some financial or business benefit from the sale to customers of Astor-branded products in New York or the United States.  Elite Gold further notably does not deny Mr. Tjay's dual affiliations or otherwise contradict Astor's theory of a concerted effort among defendants and others to sell products bearing the Elite Gold Mark in the United States.  Moreover, Elite Gold hardly addresses the fact that it registered the infringing "Astor" trademark with the PTO and, as part of its application, certified to the PTO that it was using the "Astor" mark in interstate commerce, AC ¶ 45, that it has defended its Mark against

Astor's attempts to petition the PTO to cancel it, *see id.* ¶ 52, or that, in disclosures filed with the PTO, Elite Gold listed "Mayora Group"—with "Country Manager" offices located in San Diego, California—as the first party with relevant knowledge of its activities, *id.* ¶ 9.  To be sure, these unanswered allegations likely do not on their own provide a basis for the exercise of personal jurisdiction over Elite Gold.  But they raise issues of jurisdictional fact justifying limited jurisdictional discovery.

The Court accordingly grants Astor leave to take jurisdictional discovery—limited to written and document discovery only—regarding: (i) whether and to what extent Elite Gold has granted licenses to any other entity for the sale, directly or indirectly, of products bearing the Elite Gold Mark into New York and/or the United States; (ii) the relationship between Elite Gold and the Mayora Parties, or any corporate affiliate of the Mayora Parties, including any license agreements for the Elite Gold Mark and any overlapping management or directors; (iii) the relationship, if any, between Elite Gold and Takari; and (iv) the basis for Elite Gold's representations to the PTO that it was using the "Astor" mark in interstate commerce and that a "Mayora Group" with a "Country Manager" in California had relevant knowledge of Elite Gold's activities.  Astor's demands for such discovery are due May 12, 2020, and Elite Gold shall produce all documents in response by May 26, 2020.

### D.    The Mayora Parties

Counsel's submissions as to Mayora Indah present overlapping and unresolved issues of fact regarding both service of process and Mayora Indah's contacts with the United States.[7]

---

[7] As reviewed above, Mayora Group is a trade name for Mayora Indah and not a legal entity. Lauwrus Decl. ¶ 10; *see also* AC ¶ 9.  Further, there is no legal entity named Mayora Co. Lauwrus Decl. ¶ 11; *see also* Mayora Mem. at 2.  Accordingly, because Mayora Group and Mayora Indah are the same entity, any relevant contacts by "Mayora Group" are attributable to Mayora Indah.  Barring revelation that Mayora Group and Mayora Co. are anything but names

As a threshold issue, Astor's service of process upon Mayora Indah must be procedurally proper for this Court to exercise personal jurisdiction. *Licci*, 673 F.3d at 59. Here, "the plaintiff bears the burden of establishing that service was sufficient." *Khan v. Khan*, 360 F. App'x 202, 203 (S.D.N.Y. 2010) (citing *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)).

Astor's affidavits of service state that service upon Mayora Indah was made by serving Yuki Teng. Second Hartman Decl., Ex. G ("Mayora Service Affidavits"). However, Mayora Indah, an Indonesian corporation, asserts that Mr. Teng is not authorized to accept service on its behalf. *Id.*, Ex. E ¶¶ 8–10 ("Teng Decl."). Indeed, Mayora Indah asserts that Mr. Teng is not an employee of Mayora Indah and has no relation to Mayora Indah except as the principal of Yulen, Inc., a California corporation, which provides marketing for Mayora Indah, but does not market any "Astor" product. *Id.* ¶¶ 2–6, 9.

Astor counters by noting Elite Gold's initial disclosures to the PTO in the cancellation proceeding, which identified Yuki Teng as the country manager in the United States for the "Mayora Group" and contained a Mayora email address for Mr. Teng. Lane Aff., Ex. B. Astor further cites Mayora Indah's website, which appears to show a Mayora email address attributable to Yuki Teng in connection with Mayora Indah's activities in the United States. *Id.*, Ex. A. Astor provides the LinkedIn page of a Mr. Yuki Tenggara, whom Astor represents is the same person as Yuki Teng, on which Mr. Tenggara lists his current job as "Sales and Promotion Manager at [Mayora Indah]" in San Diego, California. *Id.*, Ex. C. The LinkedIn page also describes Mr. Tenggara as "Marketing Manager USA" for Mayora Indah. *Id.*

---

used by Mayora Indah, the Court expects to dismiss those parties following jurisdictional discovery. For these reasons, in this section, the Court generally refers only to Mayora Indah.

Teng's relationship with Mayora Indah is thus a front and center issue.  It is relevant not only to whether service of process was properly effected, but also to the Court's minimum contacts inquiry and to the required certification, pursuant to Rule 4(k)(2), that Mayora Indah is not subject to personal jurisdiction in the courts of general jurisdiction of any state.  Additional factual development of Teng's connection to Mayora entities may clarify the nature of Mayora Indah's contacts with the United States.  It may also reveal that personal jurisdiction would be proper in California, forcing Astor to rely solely on New York contacts to justify the exercise of specific personal jurisdiction here.

Other genuine issues of jurisdictional fact also weigh in favor of jurisdictional discovery here.  Mayora Indah avers, *inter alia*, that it "does not sell any products in the U.S. or on Amazon," but only "sells to distributors outside of the U.S.  Lauwrus Decl. ¶ 5.  However, seemingly impeaching these claims, Astor presents evidence that Mayora Indah's website states that "[w]e currently distribute our products to more than 90 countries," including the United States, Lane Aff., Ex. A, that the website refers to "Astor" as "our brand[]," *id.*, Ex. M, that Elite Gold's PTO disclosures suggested Yuki Teng was Mayora Indah's California-based manager for U.S. operations, *id.*, Ex. B, that the packaging of the allegedly infringing products bears a "Mayora" mark, AC ¶¶ 54–55, and that Oey Him Tjay serves dual roles with Elite Gold and a Mayora-related entity that shares an address with Mayora Indah, AC ¶ 51; Lane Aff., Exs. G–H.

The Court accordingly grants Astor leave to take jurisdictional discovery regarding: (i) Yuki Teng, including his connections to, and U.S. contacts on behalf of, any Mayora entity, any other defendant, and Takari, and whether service on the Mayora Parties through Teng was proper; (ii) the factual basis for the Mayora Parties' statements that they distribute products to the United States, and that "yuki.tenggara@mayora.co.id" is the email for Mayora's U.S.

contact; (iii) why Yuki Teng lists himself as a U.S. country manager for Mayora and why Elite Gold referred to Mayora's U.S. operations in its PTO disclosures; (iv) the Mayora Parties' corporate, contractual, or other connections to each the other defendants and Takari; and (v) the Mayora Parties contacts with California, or any other U.S. state, in connection with Astor's claims.  Astor's demands for such discovery are due May 12, 2020, and Elite Gold shall produce all documents in response by May 26, 2020.

The Court further authorizes Astor to take a single Rule 30(b)(6) deposition of the Mayora Parties no later than one week after the close of document production.  Such deposition shall be strictly limited to the issues identified above.[8]  The Court directs Astor to notice the deposition on the same day that it serves its discovery demands.

To avoid unnecessary delay, in the event that service has not, in fact, properly been effected on the Mayora Parties, the Court directs Astor to begin the process of effecting foreign service on Mayora Indah—or obtaining Mayora Indah's waiver—concurrently with the taking of jurisdictional discovery.  Assuming, *arguendo*, that service on Teng was insufficient, the Court will determine whether Astor timely effected service of process by considering, *inter alia*, Astor's diligence and efforts in attempting the service on Mayora Indah.  *See In re Bozel*, 2017 WL 3175606, at *2 (assessing timeliness with due diligence standard where foreign country exception to Rule 4(m) applied); *DeLuca*, 695 F. Supp. 2d at 66 (citation omitted) (assessing timeliness by measuring plaintiff's reasonable efforts and diligence against the prejudice to defendant resulting from delay where exception did not apply and good cause was not shown).  Although the Court regards any prejudice to the Mayora Parties—who are already

---

[8] The Court expects that, given the challenges presented by the current COVID-19 pandemic, such deposition likely will be conducted remotely; and that counsel will collegially agree on the mechanics of a deposition without the need for Court intervention.

actively litigating personal jurisdiction and who appear to have first raised the issue of service in connection with this motion—as minimal, Astor must act diligently now to effect service, in case Teng was not a proper recipient.

### E.     Leave to Amend

Finally, Astor seeks leave to amend the complaint to add Takari, as well as two companies that Astor represents have begun selling products bearing the Elite Gold Mark on Amazon.com while this motion has been pending.  *See* Second Pl. Mem. at 30–31.  Although the Court previously issued an order stating that, after the filing of the AC, "[n]o further opportunities to amend will ordinarily be granted," Dkt. 21 at 1, the Court finds that interests of justice and efficient resolution of litigation require the addition of Takari—but only Takari— here.  *See* Fed. R. Civ. P. 15(a)(2).  The parties' submissions portray Takari as a key missing link, responsible for the importation of the allegedly infringing products and for supplying the Food Depot parties.  This litigation, which remains in its infancy, may greatly benefit from Takari's presence—if Takari is subject to the Court's jurisdiction.  The Court, however, denies leave to add any other parties, or to otherwise amend the complaint beyond any amendments necessary to properly allege one or more of the already pled causes of action against Takari.  The conduct of new Amazon.com sellers, beginning long after the start of this litigation and the allegations alleged here, do not belong in this case.

## CONCLUSION

For the foregoing reasons, the Court stays defendants' motions to dismiss, Dkts. 45, 61, 64, pending jurisdictional discovery, and grants Astor leave—during the time frame set out in this decision—to conduct limited jurisdictional discovery, consistent with this opinion.  The Court further grants Astor leave to file an amended complaint, consistent with this opinion, by May 19, 2020.  The Court directs Astor to begin the process of effecting service on Mayora

Indah outside of the United States forthwith, in case the limited discovery allowed by the Court reveals that Astor's prior service was ineffectual.

The Court directs Astor to submit supplemental briefs on June 2, 2020, explaining what the new discovery shows as to personal jurisdiction for each defendant.  Astor is limited to 10 pages for the Mayora Parties and to 5 pages each for the Food Depot Parties and Elite Gold. Defendants' responses are due June 9, 2020, subject to the same page limits.  The Court does not authorize a reply.


SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge


Dated: May 5, 2020
       New York, New York